## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HI TECHNOLOGY CORP and INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CASE NO.: _____ |
| v. | ) ) | JURY DEMAND |
| RODERICK J. KERSCH and NATIONSBENEFITS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

---

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

---

Plaintiffs HI Technology Corp and Interactive Communications International, Inc. bring this Verified Complaint for Injunctive Relief and Damages against Defendants Roderick J. Kersch and NationsBenefits, LLC (collectively, the "Defendants") and state as follows:

### <u>INTRODUCTION</u>

1.      This is the ultimate case of commercial backstabbing and employment deception.  A company's corporate business partner covertly engaged with one of the company's executives to help the business partner become a competitor, and then the business partner turned competitor later hired the executive – who absconded

with the company's confidential and trade secret information – to lead its competitive efforts. HI Technology is the aforementioned company, NationsBenefits is the business partner turned competitor, and Roderick Kersch is the former HI Technology executive who helped NationsBenefits orchestrate its scheme. HI Technology discovered this misconduct because Kersch unknowingly left an electronic trail of his and NationsBenefits' deceptive and unlawful behavior when he synced his personal Gmail account to his work email account. Kersch sought to hide his disloyal conduct by using his Gmail account for his communications with NationsBenefits, but his mistake in syncing the email accounts has exposed their scheme.

2. This action is based on Kersch's misappropriation of confidential/proprietary information and trade secrets belonging to HI Technology by emailing them to his personal Gmail address and to NationsBenefits executives to help NationsBenefits compete against HI Technology. This action is also based on Kersch's breach of his non-competition covenant in that he is now employed by NationsBenefits and competing against HI Technology. HI Technology brings this action against NationsBenefits for knowingly participating in Kersch's misappropriation scheme and for inducing the breach of his contractual commitments to HI Technology.

3.     Defendants' unlawful conduct has already caused, and has the potential to cause, tremendous damage to Plaintiffs, and they therefore seek injunctive relief as well as appropriate monetary damages against Defendants.  Plaintiffs are also filing a contemporaneous motion for a temporary restraining order.

## PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff HI Technology is a Georgia corporation having its principal place of business and corporate headquarters at 250 Williams Street, Suite M-100, Atlanta, Georgia 30303.

5.     Plaintiff Interactive Communications International, Inc. is a Florida corporation having its principal place of business and corporate headquarters at 250 Williams Street, Suite M-100, Atlanta, Georgia 30303.

6.     HI Technology is a holding company and the parent company of Interactive Communications International, Inc.[1]

7.     Defendant Roderick Kersch is a former employee of Interactive Communications International, Inc., and Kersch is believed to be a resident and

---

[1] The employment agreement discussed herein (the Business Protection Agreement) was entered into between Kersch and HI Technology, which was explicitly defined to include its subsidiaries.  (Exhibit A at p. 1 – the opening paragraph, and p. 2 – the definition of "Company").  For ease of reference and because the interests of the two parties are equally aligned, HI Technology and Interactive Communications International, Inc. are collectively referred to as "HI Technology" and "the Company" throughout the Complaint.

citizen of Omaha, Douglas County, Nebraska.  As explained below, Kersch is subject to the jurisdiction of this Court.

8.      Defendant NationsBenefits, LLC is a Florida limited liability company with its principal place of business located at 1801 NW 66th Avenue, Suite 100, Plantation, Florida 33313.   NationsBenefits, LLC was formerly known as NationsHearing LLC.

9.      According to Kersch's profile on LinkedIn, NationsBenefits is the current employer of Kersch.

10.     As explained below, NationsBenefits is subject to the jurisdiction of this Court, and it may be served with process at the address of its registered agent: AXS Law Group, 2121 NW 2nd Avenue, Suite 201, Wynwood, FL 33127.

11.     HI Technology employed Kersch from August 8, 2016 until July 7, 2021.

12.     On December 21, 2018, Kersch and HI Technology entered into a Business Protection Agreement ("BPA").  (Exhibit A).[2]

13.     As discussed in detail below, Kersch's BPA includes provisions whereby he agreed not to disclose and/or use HI Technology's confidential

---

[2] At the time of his hire, Kersch had signed a 2016 Employee Agreement which included post-employment restrictive covenants.  However, this action is premised on Kersch's BPA which was entered into subsequently.

information except in the performance of his job duties and he also agreed to a non-compete provision.  Kersch breached both of those contractual obligations.

14.    This Court has subject matter jurisdiction over this entire action pursuant to 28 U.S.C. § 1331 because HI Technology is asserting claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

15.    This Court has supplemental jurisdiction over HI Technology's additional causes of action pursuant to 28 U.S.C. § 1367, which states: "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  HI Technology's additional claims arise out of a common nucleus of operative fact with HI Technology's federal claim and form part of the same case and controversy.

16.    This Court has personal jurisdiction over Kersch pursuant to the forum selection clause contained in Paragraph 13 of the BPA, in which he and HI Technology agreed as follows:

> Jurisdiction and Forum Selection.  For the purpose of enforcing any provision of this Agreement with respect to which relief may be sought in a court, it is specifically agreed by Executive and the Company that Executive will bring any litigation relating to this Agreement solely in the Georgia State Court(s) for Fulton County, Georgia, or the United States District Court for the Northern District of Georgia in Atlanta, Georgia. ...  Executive consents to personal jurisdiction in the foregoing locations, and

> specifically in the Georgia State Court(s) for Fulton County, Georgia, or the United States District Court for the Northern District of Georgia in Atlanta, Georgia, and waives any right to challenge either the Company's selection of forum in any of the foregoing locations or personal jurisdiction. Executive further (i) agrees that process may be served upon him in any manner authorized by the laws of the State of Georgia, and (ii) waives and covenants not to assert or plead any objection which he otherwise might have to such jurisdiction and such process.

(Exhibit A at p. 8).

17.     Kersch's employment had a number of connections to Georgia, including that (a) he reported to leadership located in Georgia, (b) he reported to a corporate headquarters in Georgia, (c) he supervised two employees who were based in Georgia, (d) other than during the COVID-19 pandemic, he regularly visited the corporate headquarters in Georgia for meetings and to conduct Company business, (e) the revenue generated by the business for which he led sales flowed to Georgia, (f) the Company's trade secrets and confidential information to which he had access were generated in Georgia, and (g) HI Technology had two data centers in Georgia that supported the business for which he led sales.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because of the forum selection clause contained in the BPA.

19.     Because the forum selection clause agreed to by Kersch in the BPA encompasses any litigation relating to the BPA, HI Technology's claims against NationsBenefits are subject to the BPA's forum selection clause. *See Lipcon v.*

*Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (non-signatories are bound to a forum-selection clause where the party's interests are "completely derivative of those of the [signatories]—and thus directly related to, if not predicated upon the interests of the [signatories].") (internal quotations omitted); *see also Textile Rubber & Chem. Co., Inc. v. MSM Poly, LLC*, No. 4:18-CV-0276-HLM, 2019 WL 10367985, at *4 (N.D. Ga. Jan. 24, 2019) (declining to sever claims against non-signatory on remand based on forum selection clause in contract where the non-signatory's purported liability arose from the signatory defendant's alleged breach of contract).

20.    NationsBenefits is further subject to jurisdiction in this Court because the injury caused by NationsBenefits' actions occurred in Georgia where Plaintiffs maintain their principal places of business.

## FACTS

**Kersch's Employment and Contractual Commitments with HI Technology**

21.    HI Technology employed Kersch in a highly-compensated, executive role.

22.    Kersch was Vice President of Sales for a business unit which was generally referred to as "InComm Health."

23.    Kersch led the entire sales team and sales efforts for InComm Health, and he supervised four Director-level employees.

24.     Kersch had the authority to hire employees on his sales team, and his recommendations on pay changes, promotions, or terminations for employees on his sales team were given substantial weight.

25.     In his role, Kersch was privy to some of the Company's most sensitive and confidential information regarding its current business as well as its future planning for competitive efforts.

26.     In Paragraph 4 of Kersch's Business Protection Agreement, Kersch acknowledged that he received and would receive HI Technology's confidential information during his employment and that such information was the sole property of HI Technology:

Protection of Confidential Information.

(a)     Executive acknowledges and admits that:

    (i)     During the course of Executive's employment with the applicable Company, Executive has obtained and will continue to obtain, have access and be privy to information important to the Company's Business, which information Executive hereby acknowledges and agrees to be confidential. Such Confidential Information includes information which may not qualify as a Trade Secret, but which is nonetheless hereby agreed by the parties to be proprietary, confidential, and subject to the contractual protections of this Agreement. Such Confidential Information includes, but is not limited to: ***Customer and Supplier Information***: the names, addresses, and phone numbers of Company's Customers and Suppliers and all other confidential information relating to those Customers and Suppliers, including any other information relating to the Company's Customers and Suppliers that has been obtained or made known to Executive solely as the result of Executive performing his/her services for Company; ***Marketing Information***: such as the Company's

marketing methods, materials, and strategies; ***Financial Information***: such as profitability of the Company, pricing information, cost information, sales figures, sales reports, compensation paid to the Company's employees, accounting/financial records (including, but not limited to, balance sheets, profit and loss statements, tax returns, payable and receivable information, bank account information and other financial reporting information); ***Technical Information***: such as designs, methods, formulae, compositions, processes, discoveries, computer programs, and similar items, inventions (whether or not patentable), works of authorship, copyrighted materials created by or for the benefit of the Company; and ***Operations and Strategic Information***: such as the existence and content of business plans, strategy plans, future plans, matters of a Business nature such as information about the Company's files, internal memoranda, personnel policies, payroll, terms of employment.

> …

> (iii)   Such Customer and Supplier, Marketing, Financial, Technical, Operations and Strategic Information are herein after collectively referred to as "Confidential Information." Executive acknowledges that such Confidential Information are worthy of protection and are the sole property of the Company, and that the provisions of this Agreement are reasonable and necessary for the protection of the Business of the Company.

(Exhibit A at pp. 3-4).

27.   In the same Paragraph 4 of his BPA, Kersch acknowledged and admitted that HI Technology would suffer substantial damage if – during or after employment – Kersch disclosed or used such confidential information, and he further promised that he would not disclose or use it:

Protection of Confidential Information.

(a)   Executive acknowledges and admits that:

…

(ii)   The Company will suffer substantial damage which will be difficult to compute if, during the period of Executive's employment with the applicable Company or thereafter, Executive should enter a Competing Business or communicate, publish, disclose, divulge, use or authorize anyone else to communicate, publish, disclose, divulge or use, any Confidential Information.

…

(b)   Executive agrees that so long as the pertinent information or data remains confidential and not in the public domain through lawful means during that time, Executive shall not divulge or make use of any Confidential Information, directly or indirectly, personally or on behalf of any other Person without the prior written consent of the Company. This covenant is not intended to, and does not, limit in any way the rights and remedies provided to the Company under common or statutory law. The Company's Trade Secrets are also protected by law in addition to this Agreement. Executive shall maintain the secrecy and confidentiality of the Company's Trade Secrets indefinitely so long as they remain Trade Secrets.

…

(d)   To further safeguard both the Confidential Information and the Business relationships of the Company, Executive acknowledges and admits that the Customer, Supplier, Marketing, Financial, Technical, Operations and Strategic Information as set out in Paragraph 4(a)(i) above: (i) is provided in confidence, and (ii) that the sale or unauthorized use or disclosure of any of Company's Confidential Information as herein defined and obtained by Executive during his/her employment with the Company constitutes unfair competition. Executive promises not to engage in any unfair competition with Company.

(Exhibit A at pp. 4-5).

28.     Kersch promised that he would promptly return HI Technology's confidential information when his employment ended, and he again acknowledged that such information was HI Technology's sole and exclusive property:

> (e)     Executive agrees that in order to safeguard both the Confidential Information and the Business relationships of the Company, Executive agrees as follows: all equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, mailing lists, calendars, card files, Rolodexes, written and/or electronic contact lists, keys, i.d. cards, credit cards, and all other written, electronic and graphic records affecting or relating to the Business of Company, regardless of the medium in which such information is stored shall be and remain the sole and exclusive property of Company. Executive agrees not to remove any things or documents from Company's premises at any time unless those things or documents are necessary to those duties which the Executive must perform outside of the Company's premises. In the event of termination of employment with Company for any reason, Executive shall promptly deliver to the Company all equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, mailing lists, calendars, card files, Rolodexes, written and/or contact lists, all other written, electronic and graphic records relating to the Company's Business, or any other property of the Company in the possession or under control of Executive. Executive shall not maintain any copy or other reproduction whatsoever, electronic or graphic, of any of the items described in this section after the termination of such employment; provided, however, subject to Executive's obligations under this Section 4, that Executive shall be entitled to retain copies of such documents reasonably necessary to document his/her personal financial relationship (both past and future) with the Company.

(Exhibit A at p. 5).

29.     Kersch also made promises to HI Technology in regard to not competing against the Company during his employment and for two years thereafter:

Non-Competition. Executive covenants and agrees that:

(a)     During the term of Executive's employment relationship with the applicable Company, Executive will neither (i) Compete with the Company in the Territory; nor (ii) engage in discussions with a view toward, make application, plans or preparations, to form, to establish, to set up, or to become employed by, a Competing business that operates or plans to operate within the Territory.

(b)     For the period commencing on the Effective Date and continuing until the expiration of the Restriction Period, Executive will not:

…

(ii)     directly or indirectly perform any job duties substantially similar to those he or she performed for the applicable Company, for any Person engaged in the Business within the Territory, including, without limitation, as an agent, owner, partner, representative, consultant, officer, director, independent contractor or employee.

(Exhibit A at p. 3).

30.     The defined terms in the non-competition provision included the following:

"Business" shall mean the business of the Company. The business of the Company shall include, without limitation, (i) the sale, marketing and/or promotion of prepaid and stored value products and programs, such as, prepaid wireless replenishment cards and PIN delivery services, stored value financial services products such as reloadable and/or non-reloadable prepaid Visa, MasterCard, American Express products and related reload networks, third party merchant gift cards, and/or prepaid content programs, as well as transaction processing services for any of

such products or programs, (ii) bill payment services, (iii) healthcare benefits and/or any restricted spend stored value products, (iv) loyalty, electronic or printed coupons, the development, sale and marketing of mobile wallets, (v) the sale and/or resale of telecommunications services, and/or (vi) and any other products or services provided by the Company while Executive is employed.

"Compete", "Competing" or "Competitive" shall mean (i) providing products or services competitive with those provided by the Business; or (ii) entering into or attempting to enter into any business substantially similar to or competing in any way with the Business, either alone or with any Person.

"Restriction Period" shall mean a continuous uninterrupted period of two (2) years commencing upon the termination of the Executive's employment with the applicable Company that employs Executive for any reason.

"Territory" shall mean the entire geographical area of the United States (which is acknowledged and admitted by Executive to be the territory in which Executive has responsibility and duties for the Company).

(Exhibit A at pp. 2-3).

31.    Kersch acknowledged that the restrictive covenants in the BPA were necessary and reasonable.  (Exhibit A at p. 5).

32.    Upon executing his BPA, Kersch expressly agreed that HI Technology would suffer irreparable harm in the event Kersch did not honor his contractual obligations:

Equitable Relief.  Executive acknowledges that Executive's knowledge and expertise in the Company's business is and at all times during the Restriction Period will be of a special, unique, unusual, extraordinary, and intellectual character, which gives

13

said knowledge and expertise exceptional, substantial and inestimable value, and that a breach by Executive of the provisions of this Agreement cannot reasonably or adequately be compensated in damages in an action of law; and a breach of any of the restrictive covenants contained in this Agreement will cause the Company irreparable injury and damage. Executive further acknowledges that Executive possesses unique skills, knowledge and ability and that Competition in violation of this Agreement or any breach of the provisions of this Agreement would be extremely detrimental to the Company. By reason thereof, Executive agrees that the Company shall be entitled, in addition to any other remedies it may have under this Agreement or otherwise, to preliminary and permanent injunctive and other equitable relief to prevent or curtail any breach of this Agreement; provided, however, that no specification in this Agreement of a specific legal or equitable remedy shall be construed as a waiver or prohibition against the pursuing of other legal or equitable remedies in the event of such a breach.

(Exhibit A at p. 6).

33.    Kersch also agreed that Georgia law would govern any disputes in relation to the BPA and that HI Technology would be entitled to its attorneys' fees in the event the Company had to bring an action to seek redress for his violations of the BPA:

Governing Law.    Executive admits and acknowledges that Georgia is the location of the principal place of business of Company, and will be the situs of a substantial portion of his/her responsibilities and duties during his/her employment with Company. Accordingly, the parties agree that the terms of this Agreement shall be governed by and construed in accordance with the laws of the State of Georgia (without regard to conflicts of law rules).

…

14

> **Attorneys' Fees.** In the event any action or suit is brought by the Company to enforce the terms of this Agreement, the Company shall be entitled to recover, in addition to any other remedy to which it may be entitled, reimbursement for reasonable attorneys' fees, costs, cost of investigation and related expenses incurred in connection with such action.

(Exhibit A at pp. 7-8).

34.     HI Technology engages in various measures to protect its confidential and proprietary information, including but not limited to (a) the use of restrictive covenant agreements with its key employees such as Kersch, (b) IT security, such as password protection, need-to-know restrictions, termination of access rights at the close of employment, and safeguards to prevent its system from being hacked; (c) handbook policies regarding confidentiality; and (d) physical security to protect against the disclosure of sensitive materials to third parties.

**The Business of InComm Health**

35.     The business for which Kersch served as VP of Sales was generally referred to as "InComm Health."

36.     InComm Health is in a unique business space where its primary target customer base is healthcare plans.

37.     InComm Health provides a payment platform for the consumer purchase of healthcare related products that are qualifying items as specified by the applicable health plan, such as over-the-counter medicines, health and wellness-related products, first aid supplies, healthy food items, and dental, vision, and

hearing items (these products/items are generally referring to hereinafter as "OTC Products"). These OTC Products are purchased in stores, online, and over the phone.

38.  The program that InComm Health markets to the healthcare plans is generally hereinafter referred to as the Company's "OTC and Flexcard Program."

39.  After establishing a contractual relationship with a healthcare plan, InComm Health provides the health plan's members with physical or digital cards that the members may use to purchase OTC Products at participating retailers (e.g., pharmacies). The health plan then makes funds available to cover their members' card purchases.

40.  When the health plan member/cardholder visits a participating retail store or purchases online or over the phone, they can shop for eligible OTC Products and use the card to purchase the products. When the card is used, the InComm Health payment platform confirms that the products are covered by the applicable health plan, and assuming they are, the price of the products is deducted from the available balance on the account. InComm Health's payment platform also processes the purchases and tracks card balances.

41.  While there are many features to the OTC and Flexcard Program that InComm Health markets to its health plan clients, the card and the payment platform by which the purchases are processed are two key aspects of the programs.

**HI Technology's Relationship with NationsBenefits**

42.    HI Technology began a business relationship with NationsBenefits in 2018.    (The contractual relationship was through one of HI Technology's subsidiaries, InComm Healthcare & Affinity, Inc.)

43.    HI Technology partnered with NationsBenefits to expand its OTC and Flexcard Program beyond brick and mortar retail locations.  The partnership allowed health plan members/cardholders to shop online, by phone, and by catalog mail order.[3]

44.    Glenn Parker is the Chief Executive Officer and Founder of NationsBenefits.

45.    Michael Parker is the Chief Operating Officer of NationsBenefits. Michael Parker is Glenn Parker's son.

**Kersch's Termination by HI Technology and His Arguments Regarding His Non-Competition Obligations**

46.    HI Technology terminated Kersch's employment on July 7, 2021.

---

[3] The press release regarding the relationship can be found at https://www.businesswire.com/news/home/20190718005050/en/NationsHearing-Adds-Over-the-Counter-Benefit-Management-Services-to-its-Offering-and-is-Rebranding-as-NationsBenefitsTM.

47.     Upon terminating Kersch on July 7, 2021, HI Technology's initial focus was to provide him a separation agreement that included severance money which was available to him as part of his BPA. (Ex. A at pp. 6-7).

48.     One of the conditions precedents for Kersch to receive the severance money was that he would re-affirm his commitment to honor the post-employment restrictive covenants to which he had previously agreed in his BPA. Therefore, Kersch was given a severance agreement that included such an affirmation.

49.     However, Kersch responded to the severance agreement by asserting that his non-competition provision was not enforceable, causing HI Technology to question whether Kersch had plans to engage in competition with the Company.

**HI Technology's Discovery of the Illicit Relationship Between Kersch and NationsBenefits**

50.     Upon learning of Kersch's efforts to rebuff his non-compete obligations, the Company engaged in due diligence by conducting an analysis of Kersch's Company laptop computer (which he had returned upon his termination).

51.     While examining Kersch's laptop, the Company discovered that – at some point during his employment – Kersch had synced his personal Gmail account to the email management software on his laptop.

52.     By syncing his Gmail account to the email management software on the Company laptop, Kersch allowed the most current version of the Gmail account to be saved to the laptop. Specifically, the email management software on the laptop

periodically updates to mirror the cloud version of the Gmail account, and the software saves a copy to the laptop's hard drive.

53.    Kersch was presumably unaware that (a) the email management software on the laptop was saving copies of his emails to the laptop's hard drive, and (b) even when he logged out of his personal email account from the laptop, the synchronized email copies from the Gmail account would (and did) remain saved on the laptop's hard drive.

54.    The Company did not need to use, nor did it use, any of Kersch's personal passwords to access the information on the laptop's hard drive. The Company reviewed an image of the laptop's hard drive containing copies of the Gmail account that were saved to the laptop sometime before Kersch returned it to the Company.

55.    This discovery provided HI Technology access to over one hundred thousand emails.

56.    While HI Technology has not yet analyzed every single one of Kersch's Gmail account emails, the Company's efforts thus far have already revealed numerous and varied nefarious acts in which Kersch and NationsBenefits engaged while Kersch was still employed by HI Technology. Kersch and NationsBenefits sought to hide their nefarious conduct by using Kersch's Gmail account for their

communications.  The discussion below describes much of what has been discovered regarding that misconduct to date.

**Kersch and NationsBenefits' Illicit Relationship and Misconduct**

57.     As early as November 2020, Kersch began routinely sending internal Company email regarding Company business to his personal Gmail account, and in many cases forwarding the email to one or more of the NationsBenefits executives from his personal Gmail account.  By using his personal Gmail account in this way, Kersch sought to hide his disloyal conduct.

58.     For instance, on November 9, 2020, Kersch received an email to his Company email reflecting that the Company had expressed an interest in exploring a relationship with a business (Medline) that could provide services similar to the types of services that HI Technology was receiving from NationsBenefits (i.e., the ability for health plan members/cardholders to purchase OTC Products online or by phone).  The email thread had the following subject: "Potential Medline Partnership with InComm: OTC Supplemental Benefit."

59.     That same day (11/9/20), Kersch forwarded the Medline related email from his Company email to his personal Gmail, and then to Glenn Parker, CEO and Founder of NationsBenefits.  (Exhibit B)[4].

---

[4] The emails included as exhibits are copies of emails that were saved to Kersch's Company laptop as described in Paragraph 54, and which were accessed/recovered

60.     This information relating to Medline's potential partnership with HI Technology was confidential between the two parties, and it was not information that Kersch was permitted to share at that time with NationsBenefits or anyone else outside the Company.   Kersch had no legitimate business reason to share the information with NationsBenefits.     Nevertheless, Kersch was alerting NationsBenefits to the possibility that Medline would be competing against NationsBenefits for HI Technology's business.

61.     Kersch's motivation for improperly sharing this confidential information with NationsBenefits is revealed by an email from Kersch two days later – i.e., Kersch was planning for his future employment with NationsBenefits.  Again using his personal Gmail account, Kersch sent an email to CEO Glenn Parker and COO Michael Parker at NationsBenefits on November 11, 2020 with the subject line stating "Rods [sic] credentials" and with the following message: "Just wanted to supply you with this info so when [sic] time comes you already have on file.  I have dozens more recommendations but I thought this was plenty :)."  (Exhibit C).

62.     Kersch sent a similar email from his Gmail account to NationsBenefits executives Glenn and Michael Parker a few months later on January 8, 2021, again touting his candidacy for the planned future employment.  This time the email

---

by HI Technology's IT personnel after taking a forensic image of the laptop's hard drive.

subject line stated "Rod Kersch Qualifications," and the message said: "I am sending you this just to have on file and also to expose my 30 years of success not just the last 2 years. I know it's a lot, but that's the point :)." (Exhibit D).

63. These emails – coupled with the knowledge that Kersch is now employed by NationsBenefits – demonstrate that Kersch and NationsBenefits were planning for a future employment relationship at least as far back as November 2020. In anticipation of that relationship, other emails described herein also reveal that Kersch routinely shared HI Technology's confidential information to NationsBenefits for the purpose of helping NationsBenefits establish itself as a competitor to HI Technology.

64. For example, on January 8, 2021 (the same day on which Kersch had touted his qualifications to NationsBenefits for a second time as noted above), Kersch forwarded a confidential work-related email from his Company email address to his personal Gmail account, and from there Kersch emailed it to NationsBenefits executives Glenn and Michael Parker. (Confidential Exhibit E)[5].

65. This communication to the Parkers on January 8, 2021 related to HI Technology's prospecting of potential business with a healthcare plan (referred to herein as simply "ABC" Health Plan to protect confidentiality), and it is troubling

---

[5] "Confidential" exhibits cited herein will be filed under seal in accordance with the instructions from the Court/assigned Judge.

for multiple reasons.   One, while NationsBenefits could legitimately have been involved with HI Technology's efforts to secure the ABC business, the fact that Kersch forwarded the email exchange to his personal Gmail account **and then** sent the information to NationsBenefits from his personal Gmail account indicates bad intent and an attempt to be secretive in disclosure.   Two, the ABC information Kersch sent to NationsBenefits included confidential pricing information that NationsBenefits would not need based on their "legitimate" involvement.   Three, later communications – as discussed below – involving Kersch and NationsBenefits further support that Kersch's goal was to further NationsBenefits' rather than HI Technologies' interests with ABC.

66.    Another improper communication between Kersch and NationsBenefits regarding potential work with ABC began a week later on January 15, 2021 and continued through January 22, 2021.  (Exhibit F).  This particular exchange involved Kersch (again using his personal Gmail account) emailing with NationsBenefits COO Michael Parker, and it reflects that Parker was sharing details about what NationsBenefits could provide to ABC.  There is no reference anywhere in the exchange regarding HI Technology's involvement.   Among Parker's suggestions regarding the NationsBenefits offerings to ABC, there is a specific reference to "Retail" but with no reference or suggestion that HI Technology would be involved.  (Exhibit F at pg. 5).   This exemplifies the disloyal nature of the

communications because NationsBenefits was not involved or needed in the retail store side of HI Technology's business, and it points to the fact that NationsBenefits was starting to position itself (with Kersch's help) as a direct competitor to HI Technology rather than its business partner.

67.     Another instance of improper sharing of Medline-related information by Kersch to NationsBenefits occurred in February 2021.   As discussed above, Kersch had initially improperly shared with NationsBenefits on November 9, 2020 that HI Technology was exploring a potential relationship with Medline that could disadvantage NationsBenefits.   In the second example of Kersch's improper disclosure on this subject, Kersch had participated on February 5, 2021 in a high-level call involving HI Technology leadership and Medline where the parties discussed moving forward with a relationship between the two companies and whereby Medline would provide services for HI Technology that mirrored the services that NationsBenefits provided for HI Technology.

68.     Later that same day after the Medline meeting, Kersch sent an email to Glenn and Michael Parker at NationsBenefits from Kersch's personal Gmail account wherein Kersch warned NationsBenefits that the Medline/HI Technology relationship was moving forward and he stated that they needed to talk about it: "Need to discuss Medline, it's not just a quick look, the call reviewed that they medline [sic] and our marketing teams have been working on material."

69.     Kersch sent another notable email in that same timeframe.  On February 4, 2021, Kersch forwarded to his personal Gmail account an email that included two Excel spreadsheets containing highly confidential and trade secret information. (Confidential Exhibit G).  One spreadsheet was called "Healthplans as of 2021" and the second was titled "Fee Report – Distribution."  ***The "Healthplans" document listed every customer of HI Technology.***  While both spreadsheets are highly confidential, the "Fee Report" is akin to the formula for Coca Cola for HI Technology in that ***the Fee Report includes pricing information for every customer and program of the Company.***  In the hands of a competitor, the Fee Report provides the competitor all the information it needs to undercut HI Technology's pricing in every single one of its accounts.

70.     Kersch's efforts to assist NationsBenefits in its competitive planning continued later in February 2021.  On February 8, 2021, Kersch communicated (yet again using his personal Gmail account) with Glenn and Michael Parker about "card manufacturing," and the emails reflect that Kersch was coordinating a business transaction with a vendor to manufacture cards for NationsBenefits.  (Exhibit H). The reference to "card manufacturing" reflects activity that is directly competitive to HI Technology in that HI Technology provides physical cards to its health plan clients for members purchasing OTC Products.  When NationsBenefits was partnering with HI Technology, NationsBenefits had no need to manufacture its own

cards in that HI Technology always handled that aspect of the OTC and Flexcard Program because it was foundational to the retail store side of the business – a side of the business in which NationsBenefits was not involved.

71.    This coordination by Kersch for NationsBenefits' behalf regarding the card manufacturing appears to be connected to communications a few weeks later on March 1, 2021 when Kersch received an invitation to a meeting from Juan Yanez to discuss "New Opportunities."  (Exhibit I).  Juan Yanez had been included in the February 8, 2021 "card manufacturing" communications, and Kersch forwarded the March 1, 2021 meeting invite to Glenn and Michael Parker with a message of "FYI." (Id.)

72.    There were yet additional communications on April 26, 2021 and May 14, 2021 indicating that Kersch (through his personal Gmail account), Juan Yanez, Glenn Parker, and Michael Parker were scheduling an online "Technical Meeting." (Exhibit J).   While no additional details were provided in these emails, upon information and belief, this "Technical Meeting" reflected NationsBenefits' further planning and efforts to establish itself as a direct competitor to HI Technology with Kersch's assistance.

73.    More improper activity involving Kersch and NationsBenefits and their focus on ABC Health Plan is reflected in communications in February and March 2021.  In multiple emails on February 24, 2021, and again on March 12, 2021,

Kersch tried to arrange a meeting with an ABC executive while he was going to be in California (where ABC's office is located) on a trip where Glenn Parker was going to be with Kersch and paying for the trip. (Confidential Exhibit K - "…Glenn is traveling with me and I'm on his dime…"). In the emails, Kersch communicated with ABC via his personal Gmail account, and Kersch referenced a potential transaction with ABC and NationsBenefits but without any hint of involvement by HI Technology. Based on some numbers referenced by Kersch in his March 12, 2021 emails with the ABC representative, Kersch's focus appears connected to the proposed transaction between NationsBenefits and ABC that Kersch and Michael Parker had communicated about in January 2021 as reflected in Paragraph 66 above.

74. Notably, when traveling in California in March 2021 on NationsBenefits/Glenn Parker's "dime" as reflected in the above-described emails, Kersch was still employed by HI Technology and he did not take any time off during this period.

75. The nefarious nature of Kersch's dealings with ABC Health Plan is further evident by the fact that one of the HI Technology sales persons who worked under Kersch would often ask Kersch about the status of any discussions with ABC and Kersch would tell her to stand down because he was handling ABC. Kersch, already acting on behalf of NationsBenefits instead of HI Technology despite the

fact that the latter was paying his considerable salary, was hoarding information about ABC for himself.

76.   Another confirmation of Kersch's disloyal actions against HI Technology and in favor of NationsBenefits occurred on April 8, 2021.  On that date, HI Technology employee Dave Etling (Senior Vice President & General Manager) sent Kersch an email which stated: "**Don't do anything with this**, but are we having active dialog with [XYZ][6]?"  (Confidential Exhibit L) (emphasis added).  When asking Kersch that question, Etling also forwarded to Kersch a long email thread which detailed a significant potential business opportunity for HI Technology.

77.   Kersch responded to Etling's question by stating: "Not to date.  We have called on them several times their [sic] a decent size MA plan like 50k."  (Id.)

78.   After his exchange with Etling, and after seeing Etling's explicit "don't do anything with this" instruction, Kersch forwarded this email thread from his HI Technology email account to his personal Gmail account.  (Id.)  Minutes later, Kersch sent an email from his personal Gmail to Glenn and Michael Parker with NationsBenefits.  (Confidential Exhibit M).  In his email to Glenn and Michael Parker, Kersch lists the name of the target prospect in the subject line, and he introduces his email with the following message: "See below…....**Don't call till we talk**……This is information from Walgreens to Brian and Dave……"  (Id.)

---

[6] XYZ is used instead of the specific company referenced to protect confidentiality.

(Emphasis added). After that introductory message, Kersch then included a "cut and paste" of significantly substantive and confidential information that had come from the original email thread that he had received from Dave Etling regarding the potential business opportunity.

79. Upon information and belief, Kersch's "don't call till we talk" instruction to the Parkers was telling them to temporarily hold off on calling the prospect directly about the potential business opportunity – bypassing HI Technology altogether – **until** Kersch and the Parkers could first discuss further the opportunity and how to best usurp the opportunity that HI Technology was considering.

80. Additional evidence of NationsBenefits' efforts to become a competitor to HI Technology – and Kersch's integral involvement in same while still employed by HI Technology – transpired in late April 2021 when Kersch communicated (through his personal Gmail account) with a financial services company that could provide a payment processing platform for NationsBenefits, and Kersch then forwarded that information to Glenn Parker and Michael Parker. These communications are further proof of NationsBenefits and Kersch's efforts to compete against HI Technology because NationsBenefits did not yet have a payment processing platform – absent its relationship with HI Technology – and

NationsBenefits needed such a platform before it could facilitate the purchase of OTC Products in retail stores.

81.    Upon information and belief, NationsBenefits has in fact secured a financial services company business partner – a company by the name of FIS – that is providing and/or will provide NationsBenefits with the payment processing platform that enables NationsBenefits to compete directly against HI Technology in the retail/brick and mortar space.

82.    Upon information and belief, NationsBenefits is and has been holding itself out in the marketplace as a competitor to HI Technology by offering services in the retail space that are directly competitive to services that HI Technology has provided and is providing.

83.    Upon information and belief, NationsBenefits is and has been telling HI Technology clients that they should switch their relationship from HI Technology to NationsBenefits.

**Additional Disloyal Behavior by Kersch**

84.    In addition to the discovery of Kersch's disclosure/sharing of HI Technology's confidential information to NationsBenefits and his assistance in helping NationsBenefits to set itself up as a competitor to HI Technology, Kersch engaged in other improprieties as reflected by his personal Gmail account activity.

85.    For example, on January 12, 2021, Kersch was working behind the scenes and contrary to HI Technology's interests in terms of the non-compete obligations of a former HI Technology, Rob Jundt, who had worked under Kersch. Specifically, Kersch was involved in efforts to help Jundt develop arguments against the enforcement of Jundt's non-compete agreement with HI Technology.  (Exhibit N).

86.    Kersch sent highly confidential financial information relating to HI Technology to persons outside the Company – once on January 22, 2021 to his son (who began working for NationsBenefits as of April 2020 according to LinkedIn) and then again on February 12, 2021 (to two persons – Rob Jundt and Suzanne Ohara – who were formerly employed by HI Technology).  (Confidential Exhibits O and P).   The confidential financial information Kersch sent was the EBITDA performance and history of the Company, as well as detailed profit and loss information.   As a private company, HI Technology does not publicize such information.  Notably, Kersch also sent the same two former employees (Jundt and Ohara) financial information regarding HI Technology's relationship with NationsBenefits.  (Confidential Exhibit Q).

87.    On February 4, 2021, Kersch sent more confidential information to Rob Jundt, the former HI Technology employee referenced in the two paragraphs above. On this occasion, Kersch had forwarded a work email to his persona Gmail account,

and he then sent (from his personal Gmail account) Jundt an email with confidential proposed pricing details for a health plan whose business HI Technology was attempting to secure.  (Confidential Exhibit R).

88.    On April 1, 2021, Kersch (from his personal Gmail) sent former employee, Suzanne Ohara, a highly confidential RFP presentation that HI Technology had just presented to a health plan for which HI Technology was responding to a Request for Proposal.   (Confidential Exhibit S).

89.    Upon information and belief, NationsBenefits participated in the same Request for Proposal process, but in competition with HI Technology.

90.    On May 6, 2021, Kersch (from his personal Gmail) sent an email to Glenn and Michael Parker where Kersch alerted the Parkers to business activity that NationsBenefits should consider, and Kersch indicated that he was having a HI Technology employee on his sales team conduct research on the topic.  (Exhibit T).

**Threatened Harm by Kersch and NationsBenefits Due to Kersch's Employment with NationsBenefits**

91.    By August 9, 2021, Kersch's LinkedIn profile showed that he was working full-time for NationsBenefits as VP of Sales.

92.    Prior to Kersch's employment with NationsBenefits, HI Technology is not aware anyone at NationsBenefits who had a "sales" related title.  When HI Technology was working with NationsBenefits, virtually all of the communications were with Glenn and Michael Parker.

93.     Upon information and belief, NationsBenefits has recently participated in multiple requests for proposals from healthcare plans in competition with HI Technology.

94.     Upon information and belief, NationsBenefits' participation in the recent proposals was facilitated – at least in part – by Kersch's illicit activities while he was employed by HI Technology.

95.     Upon information and belief, NationsBenefits is and has been telling HI Technology clients that they should switch their relationship from HI Technology to NationsBenefits.

96.     Upon information and belief, Kersch is now positioned to lead NationsBenefits in its competitive activities against HI Technology, both in terms of fulfilling any proposal requests that are awarded to NationsBenefits involving retail stores as well as planning future efforts directly competitive to HI Technology.

97.     Upon information and belief, Kersch is performing a number of duties for NationsBenefits that are the same or similar to the executive duties he performed as VP of Sales for HI Technology and in the same territory that he worked for HI Technology.

98.     HI Technology is threatened with immediate and irreparable harm as a result of Kersch's actions.  Kersch can use the confidential/trade secret information he misappropriated from HI Technology to compete against the Company.

99.    Kersch's actions create the strong possibility that NationsBenefits will be able to take HI Technology's business with key clients and prospects.  As a result, HI Technology seeks immediate injunctive relief and recover of money damages.

## COUNT I
## Breach of Contract

100.   HI Technology alleges and incorporates by reference the preceding paragraphs as if set forth herein.

101.   The Business Protection Agreement between Kersch and HI Technology is a valid and enforceable contract.

102.   Kersch is subject to the promises he made in the BPA.

103.   In the BPA, Kersch promised that he would not compete against HI Technology during his employment by either attempting to enter any business that was substantially similar to or competitive with HI Technology, whether by doing so alone or with any other person or business, or by engaging in discussions or planning with a view towards becoming employed by a competitor.  (Exhibit A at p. 2).

104.   Kersch has breached that promise through his efforts – while still employed by HI Technology – to assist NationsBenefits in establishing itself as a competitor to HI Technology and by planning for his employment with NationsBenefits to eventually lead such competitive activity.

105.   In his BPA, Kersch promised that for a period of two years after his separation of employment from HI Technology he would not directly or indirectly perform job duties that were substantially similar to the job duties he performed for HI Technology in the United States on behalf of a competitor.  (Exhibit A at p. 3).

106.   Upon information and belief, Kersch is now breaking that promise given that he is employed by NationsBenefits, he is performing substantially similar duties to those he performed for HI Technology, and NationsBenefits is now directly competing against HI Technology.

107.   In his BPA, Kersch promised that he would not engage in the unauthorized use or disclosure of HI Technology's confidential information. (Exhibit A at pp. 4-5).

108.   Kersch has breached that promise through his unauthorized disclosure of HI Technology's confidential information to NationsBenefits and others as described above.

109.   In his BPA, Kersch promised that he would return HI Technology's confidential information upon the termination of his employment.  (Exhibit A at p. 5).

110.   Kersch has breached that promise by not returning HI Technology's confidential information that he sent to himself and others without authorization.

111.  As a direct and proximate result of Kersch's breaches of the BPA, HI Technology has suffered and continues to suffer damages and irreparable harm, and is entitled to damages to be proven at trial, pre- and post-judgment interest, court costs, attorneys' fees, and injunctive relief.

**COUNT II**
**Actual and Threatened Misappropriation**
**Under the Defend Trade Secrets Act**

112.  HI Technology alleges and incorporates by reference the preceding paragraphs as if set forth herein.

113.  Many of the above-described communications and other documents, including but not limited to the highly confidential spreadsheet titled "Fee Report – Distribution" that Kersch sent to his personal Gmail account in February 2021, are or contain trade secrets of HI Technology subject to protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

114.  The information contained in these communications and other documents is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use.  HI Technology has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor, including NationsBenefits.

115.   HI Technology takes, and at all time here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include restricting availability of confidential information to key employees, requiring key employees such as Kersch to execute agreements with confidentiality provisions and restrictive covenants, physical security measures to protect against the disclosure of sensitive materials to third parties, and IT security efforts.

116.   Kersch's foregoing conduct constitutes an actual and threatened misappropriation and misuse of HI Technology's trade secret information in violation of the DTSA.

117.   Upon information and belief, and as HI Technology expects to establish on further investigation and discovery, Kersch has improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) confidential business information and strategies contained in the HI Technology documents and information he took or disclosed from HI Technology without authorization and in breach of his Agreement.

118.   Kersch engaged in this conduct despite acquiring this information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Kersch owed and continues to owe HI Technology as a former agent, employee and representative of HI Technology.

119. As a direct and proximate result of Kersch's actual and threatened misappropriation of HI Technology's trade secrets, HI Technology has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Kersch is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to HI Technology.

120. As a direct and proximate result of Kersch's misappropriation, HI Technology has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA. Each of the acts of misappropriation was done maliciously by Kersch, thereby entitling HI Technology to exemplary damages to be proved at trial.

121. To the extent that Kersch has already provided HI Technology's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

## COUNT III
### Actual and Threatened Misappropriation
### Under the Georgia Uniform Trade Secrets Act

122. HI Technology alleges and incorporates by reference the preceding paragraphs as if set forth herein.

123. The Georgia Uniform Trade Secrets Act ("GUTSA"), codified at O.C.G.A. § 10-1-760 *et seq.*, prohibits persons from misappropriating trade secrets.

124.   Upon information and belief, Kersch knowingly violated the GUTSA by fraudulently obtaining, retaining, and then using the HI Technology trade secret files and documents for his own benefit and/or the benefit of NationsBenefits in competition with the Company.

125.   The trade secrets misappropriated by HI Technology derive independent economic value from not being generally known or ascertainable by proper means. The information is the result of years of investment by HI Technology and allows HI Technology to remain competitive in the marketplace.

126.   HI Technology takes, and at all time here relevant, has taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include restricting availability of confidential information to key employees, requiring key employees such as Kersch to execute agreements with confidentiality provisions and restrictive covenants, physical security efforts to protect against the disclosure of sensitive materials to third parties, and IT security measures.

127.   On information and belief, Kersch has used and will continue to use HI Technology's trade secret information, without HI Technology's authorization, to improve NationsBenefits' business and to gain a competitive advantage over HI Technology.

128.   As a direct and proximate cause of Kersch's actual and threatened misappropriation of HI Technology's trade secrets, HI Technology has suffered

irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Kersch is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to HI Technology.

129.    As a direct and proximate result of Kersch's misappropriation, HI Technology has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the GUTSA. Each of the acts of misappropriation was done maliciously by Kersch, thereby entitling HI Technology to exemplary damages to be proved at trial.

## COUNT IV
## Breach of Duty of Loyalty

130.    HI Technology alleges and incorporates by reference the preceding paragraphs as if set forth herein.

131.    Kersch was employed by HI Technology in a position of trust and responsibility in an executive role capacity.  In such capacity, Kersch owed HI Technology a duty of loyalty to act in HI Technology's best interests at all times and not to engage in activities harmful or detrimental to HI Technology.

132.    While employed with HI Technology, Kersch inappropriately shared HI Technology's confidential and trade secret information with NationsBenefits, and Kersch willfully and maliciously engaged in activity to assist NationsBenefits in

becoming a competitor to HI Technology, and while still employed by the Company and without HI Technology's consent or knowledge

133.   Kersch engaged in other disloyal actions while still employed by the Company as described above.

134.   Kersch's breach of his duty of loyalty has caused HI Technology to suffer irreparable harm and economic damages in an amount to be determined at the trial of this matter.

135.   HI Technology is specifically entitled to disgorgement of the compensation paid to Kersch during his period of disloyalty, as well as any lost profits and/or unjust enrichment resulting from his breach of his fiduciary duties.

136.   HI Technology is also entitled to punitive damages against Kersch because he has acted with extremely culpability in assisting NationsBenefits to operate as a direct competitor to HI Technology during the time he was employed by HI Technology.

**COUNT V**
**Tortious Interference with HI Technology's**
**Contractual Relationship with Kersch**

137.   HI Technology alleges and incorporates by reference the preceding paragraphs as if set forth herein.

138.  HI Technology had a valid contract with Kersch that included confidentiality and non-competition obligations, with which NationsBenefits improperly interfered.

139.  HI Technology had legitimate and protectable interests in its contract with Kersch.

140.  Upon information and belief, NationsBenefits knew or should have known of HI Technology's contract with Kersch.

141.  NationsBenefits intentionally encouraged and induced Kersch to violate his restrictive covenants, including but not limited to his confidentiality and non-competition obligations with HI Technology, to advance NationsBenefits' own pecuniary interests.

142.  NationsBenefits lacks justification for its use of wrongful means to intentionally interfere with HI Technology's contract with Kersch.

143.  As a result of NationsBenefits' tortious interference, HI Technology has suffered, and will continue to suffer, irreparable harm and economic damages in an amount to be determined at trial.

144.  HI Technology is also entitled to punitive damages because NationsBenefits has engaged in aggravated, unjustified interference with HI Technology's contractual rights.

## **PRAYER FOR RELIEF**

WHEREFORE, HI Technology respectfully requests:

A.     A temporary restraining order, preliminary injunction, and a permanent injunction requiring Defendants (and any persons acting in concert with them or on their behalf) to: (i) return all HI Technology property, including property in electronic form, in their possession and forbidding them from using, disclosing or acquiring said property (as well as any work product derived from HI Technology property); (ii) comply with the obligations set forth in the Business Protection Agreement, including but not limited to the noncompetition and confidentiality provisions; and (iii) make available for inspection and imaging any computers, external storage devices, mobile devices, and all personal Cloud and email accounts to determine the full extent of Defendants' access, possession, retention, and use of HI Technology's confidential information or trade secrets;

B.     Judgment in favor of HI Technology and against Kersch and NationsBenefits;

C.     An award to HI Technology of actual damages (such as lost profits) and disgorgement of amounts by which Kersch and/or NationsBenefits were unjustly enriched, or in the alternative, a reasonable royalty;

D.     An award to HI Technology of punitive and/or exemplary damages;

E.     An award to HI Technology of prejudgment interest; and

F.      An award to HI Technology of its reasonable attorneys' fees and its costs incurred in this action; and

G.      Such other and further relief as this Court deems just and proper.

## HI TECHNOLOGY DEMANDS A TRIAL BY JURY ON ALL COUNTS.

DATED: August 24, 2021.

Respectfully submitted,

*/s/ Joseph P. Shelton*
Joseph P. Shelton
Georgia Bar No. 640630
**FISHER & PHILLIPS LLP**
3310 West End Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 488-2901
Facsimile: (615) 488-2928
Email: jshelton@fisherphillips.com

Michael P. Elkon
Georgia Bar No. 243355
melkon@fisherphillips.com

**FISHER & PHILLIPS LLP**
1075 Peachtree Street, Suite 3500
Atlanta, Georgia 30309
Telephone: (404) 231-1400
Facsimile: (404) 240-4249

*Counsel for Plaintiffs*

## **VERIFICATION**

STATE OF GEORGIA                    )
                                    )
COUNTY OF  FULTON                   )

Personally appeared before the undersigned officer duly authorized to

administer oaths, Brian Parlotto who, after being duly sworn, deposes and says that

the facts and information set forth in the within and foregoing Verified Complaint

are true and correct to the best of his own personal knowledge, information and

belief.

This 23rd day of August, 2021.

Brian Parlotto
Executive Vice President
Interactive Communications International, Inc.

Sworn to and subscribed
before me this _23_ day
of August, 2021

Notary Public

My commission expires: _August 23, 2024_